UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10-CV-014-RLV

| | |
|---|---|
| CHERYL B. CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Memorandum and Order** |
| | ) |
| MCREARY MODERN, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on Plaintiff Cheryl B. Carter's ("Carter") Motion for Summary Judgment (Doc. #8), filed July 13, 2010, Defendant McCreary Modern, Inc.'s ("McCreary") Motion for Summary Judgment (Doc. #12), filed August 6, 2010, Plaintiff's Objections to the Magistrate Judge's Order Regarding Plaintiff's Motion to Compel (Doc. #28), filed November 18, 2010, and Defendant's Response in Opposition to Plaintiff's Objections to Memorandum and Order and Request for Attorney's Fees, (Doc. #29), filed November 24, 2010. This matter is ripe for disposition.

## BACKGROUND

This case arises out of alleged unlawful employment practices performed by McCreary or its employees against Carter. (Compl. ¶ 11). Plaintiff is a resident of Lincoln County, North Carolina, while Defendant company is a North Carolina furniture manufacturer, with its principal office in Hickory, North Carolina. (Compl. ¶¶ 1-2). Defendant admits that it employs more than 300 employees, and is an "employer" for purposes of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (1990), and the North Carolina Equal Employment Practices Act ("NCEEPA"). (Compl. ¶ 2, see Doc. #2, ¶ 2).

1

The undisputed facts follow. In late August, 2007, Plaintiff applied for employment with the Defendant as a hand-mark cutter. (Compl. ¶ 4). Plaintiff interviewed with Chris Abernathy, Defendant's cutting supervisor, on Sept. 6, 2007, and was offered employment as a cloth cutter, provided she passed drug testing and a medical examination. (Compl. ¶¶ 4-5). Several days later, Plaintiff was examined by Janet Greer, Defendant's Nurse of Occupational Services. (Compl. ¶ 6). Plaintiff informed Greer that she experienced lower back pain, but that she had no medical restrictions and could perform the essential functions of the cloth cutter position. (Compl. ¶ 6). Plaintiff also disclosed that she took medications for her back pain, including hydrocodone, cyclobenzaprine, and acetaminophen, but only as needed and never when she was working. (Compl. ¶ 6; Doc. #20, Ex. 12, ¶ 7; see also "Carter's Medical Records" attached to Doc. #20, Ex. 12). Plaintiff passed the official ("confirmation") drug screening test, but failed the preliminary drug screening ("quick") test. (Compl. ¶ 7; Doc. #12, Ex. G). In addition, Plaintiff passed other tests, including four exercises, spine exam, and hand grip test. (Compl. ¶ 7; Doc. #12, Ex. G). Greer asked for and received Plaintiff's medical records from Plaintiff's personal physician, Steven A. Gold. (Compl. ¶ 7). On September 17, Susan Shook, the Director of Human Resources for Defendant, after a consultation with Greer, called the Plaintiff to deny her job application. (Doc. #9, Ex. 8).

## PROCEDURAL HISTORY

On January 22, 2010, Plaintiff filed her original complaint against McCreary in the Superior Court Division for the County of Catawba, North Carolina. (Doc. #1). Plaintiff had previously exhausted her administrative remedies through the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶¶ 12-15). Defendant later removed the case to the Western District pursuant to 28 U.S.C. §1441(a). (Doc. #1). Subject matter jurisdiction is founded on federal question. (Doc.

#1).

In the original complaint, Plaintiff claimed violations of the Americans with Disabilities Act of 1990 ("ADA"),[1] 42 U.S.C. § 12101, et seq., and the public policy of North Carolina as codified by the NCEEPA, N.C. Gen Stat. § 143-422.2 (1977). (Compl. ¶¶ 18, 22). Plaintiff asks for compensatory and punitive damages under both state law and the ADA. (Compl. ¶¶ 19-20, 23-24). The parties now bring cross-motions for summary judgment.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when no "genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);[2] Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 317-18 (1986). The Court should examine all evidence, including pleadings, depositions, affidavits, answers to interrogatories and admissions on file. Fed. R. Civ. P. 56(c). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. All of the facts and inferences drawn from the evidence must be viewed in the "light most favorable to the non-moving party." Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990); see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (noting that the

---

[1] Congress passed the ADA Amendments Act of 2008 ("ADAA") in reaction to the Supreme Court's ruling in Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002), superseded by statute, ADA Amendments Act of 2008, Pub.L. 110-325, 122 Stat. 3553, substantially expanding the class of individuals covered by the ADA. However, as this incident happened before the effective date of these Amendments, and both parties have consented to the use of the pre-2008 version of the ADA, this court will evaluate Plaintiff's claims with the pre-2008 ADA. (See Doc. #9, n.1; Doc. #2, ¶ 3). It is unlikely, in any case, that these amendments would prove retroactive. See Bateman v. American Airlines, Inc., 614 F. Supp. 2d 660, 670 n.1 (E.D.Va. 2009) (finding that the ADAA does not apply retroactively), Tish v. Magee-Women's Hosp. of Univ. of Pittsburgh Med. Ctr., No. 2:06-CV-8202008, WL 4790733, at *5 n.5 (W.D.Pa. Oct. 27, 2008) (finding it "doubtful" that the ADAA is retroactive).

[2] Fed. R. Civ. P. 56 was amended in 2010, moving the summary-judgment standard from subdivision (c) to subdivision (a), and changing genuine "issue" to genuine "dispute." However, the current standard is not materially changed from the pre-2010 standard, and pre-2010 case law remains controlling.

3

non-moving party is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.").

A mere scintilla of evidence is not sufficient to overcome summary judgment. Anderson, 477 U.S. at 252. The Court may consider a fact undisputed for the purposes of this motion if one party fails to properly support an assertion of fact or to properly address another party's assertions. Fed. R. Civ. P. 56(e). The non-moving party must bring forth facts showing that "reasonable minds could differ" on a material point in order to show that a genuine dispute exists. Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (citing Anderson, 477 U.S. at 250). Evidence that is merely colorable or that is not significantly probative will not defeat a motion for summary judgment. Anderson, 477 U.S. at 249-250 (internal citations omitted). Furthermore, "[the plaintiff's] naked opinion, without more, is not enough to establish . . . discrimination." Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988) (upholding awarding of summary judgment where the plaintiff failed to produce evidence other than bare allegations in an age discrimination case).

B. **Americans with Disabilities Act Claim**

The Fourth Circuit uses the McDonnel Douglas burden-shifting analysis for ADA claims. Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) ("[W]e hold that the McDonnell Douglas scheme of proof does apply to appropriate claims under the ADA."). However, the McDonnell Douglas scheme is not intended "to be rigid, mechanized, or ritualistic." Furnco Const. Corp. v. Waters, 438 U.S. 567, 577 (1978). Instead, it is intended to provide a useful tool in evaluating "whether the plaintiff successfully demonstrated that the defendant intentionally discriminated against her." Ennis, 53 F.3d at 59; see also Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511 (4th Cir. 1994) ("Appellate courts have been cautioned not to immerse themselves

4

in the minutiae of the various proof schemes."). First, the plaintiff must present a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Secondly, the employer must rebut by "articulating some legitimate, nondiscriminatory reason" for the allegedly discriminatory action. Id. Finally, the Court considers whether plaintiff has shown that the employer's stated reason is a pretext. Id. at 804.

In this case, Plaintiff brings a "regarded as" disabled claim under the ADA, 42 U.S.C. § 12101, et seq., and alleges improper "qualification standards" that tend to screen out disabled applicants, 42 U.S.C. § 12112(b)(6)-(7). Defendant rebuts by claiming the direct threat affirmative defense and the business necessity defense. 42 U.S.C. § 12113. Plaintiff then claims that Defendant failed to make an individualized assessment of her qualifications, and that the direct threat and business necessity defense are merely a pretext to mask Defendant's alleged stereotypes about disabled people and to protect the Defendant from potential worker's compensation costs. The Court will consider these matters in turn.

### a. "Regarded as" ADA Claim

The first allegation that Plaintiff makes is that Defendant regarded Plaintiff as disabled. See 42 U.S.C. § 12102(2)(C). "[A] person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." Murphy v. United Parcel Serv., 527 U.S. 516, 521-22 (1999). Thus, Plaintiff need only show that Defendant mistakenly believed Plaintiff was disabled, not that Plaintiff actually was disabled. The Court's analysis should "[focus] on the reactions and perceptions of the relevant decisionmakers." Runnebaum v. NationsBank of Maryland, N.A., 123 F.3d 156, 172 (4th Cir. 1997), overruled on other grounds by Bragdon v. Abbott, 524 U.S. 624 (1998). It is "insufficient for a plaintiff to merely show that the employer was aware of the

plaintiff's alleged impairment; rather, the plaintiff must demonstrate that, based on the perceived impairment, the employer regarded the employee *as disabled within the meaning of the ADA*." Brooks v. Micron Tech., Inc., No. 1:09-cv-00679, 2010 WL 1779693, at *4 (E.D.Va. April 30, 2010) (quoting Hill v. Verizon Maryland, Inc., No. RDB-07-3123, 2009 WL 2060088, at *8 (D.Md. July 13, 2009)). A disability determination must be an individualized inquiry. Taylor v. Federal Express Corp., 429 F.3d 461, 463 (4th Cir. 2005) (citing EEOC v. Sara Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001)).

An employee is regarded as substantially limited in her ability to work if the employer recognized her "to be significantly restricted in [her] ability to perform either a class of jobs or a broad range of jobs in various classes." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 303 (4th Cir. 1998) (discussing 29 C.F.R. § 1630.2(j)(3)(i)). "[O]ne must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999), *superseded by statute*, ADA Amendments Act of 2008, Pub.L. 110-325, 122 Stat. 3553. Plaintiff alleges that Defendant perceived her as disabled because of her back pain and the alleged lifting and working impairments.[3] Plaintiff points to Greer's alleged "cursory" review of her medical history, and the fact that Greer's determination is at odds with Plaintiff's personal physician's (Gold's) conclusions. (Doc. #9).

---

[3]The Fourth Circuit has held that a lifting restriction alone does not constitute a disability under the ADA. See, e.g., Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 470 (4th Cir. 2002); Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir. 1996) ("Williams"). Defendant claims that it viewed the Plaintiff as having a lifting restriction of fifty pounds, and that restriction, as a matter of law, is not a substantial limitation. See, e.g. Williams, 101 F.3d at 349 (finding that a twenty-five pound lifting restriction is not a substantial limitation). However, "Williams should not be read to create a per se rule that a twenty-five pound lifting restriction can never constitute a disability." Taylor v. Federal Express Corp., 429 F.3d at 463 n.2 (emphasis omitted). A lifting limitation, along with other factors, can rise up to a level of "substantially limiting" in the major life activity of working. Id. at 464 (noting that the court's individualized analysis involves consideration of the impairments' effect, including lifting, on plaintiff's job prospects).

6

It is "insufficient for a plaintiff to merely show that the employer was aware of the plaintiff's alleged impairment; rather, the plaintiff must demonstrate that, based on the perceived impairment, the employer regarded the employee *as disabled within the meaning of the ADA*." Hill, 2009 WL 2060088, at *8 (citing Caruso v. Camilleri, No. 04–CV–167A, 2008 WL 170321 *18 (W.D.N.Y. Jan. 15, 2008)); see also Goldberg, 836 F.2d at 848 ("[The plaintiff's] naked opinion, without more, is not enough to establish . . . discrimination."). The mere refusal to hire for a single position is not enough to prove a "regarded as" ADA claim. See Correa v. Roadway Express, No. 1:00CV00587, 2003 WL 42143, at *6-7 (M.D.N.C. Jan. 2, 2003) (finding that a refusal to hire based on belief employee not eligible for single position was not evidence employer regarded plaintiff as disabled).

There is no evidence to suggest that the Defendant regarded the Plaintiff as being precluded from a "substantial class of jobs." Greer and Shook emphasized that they believed that the Plaintiff could work in other jobs, including sewing, inspection and clerical jobs at McCreary, but that she was not qualified for this particular job. (Doc. #12, Ex. B, ¶23; Doc. #12, Ex. A, ¶¶12-14). Greer even knew that Plaintiff was currently holding a similar job to the one Plaintiff applied for and had held similar jobs for many years at other furniture manufacturers. (Doc. #12, Ex. B, ¶24); see Rohan v. Networks Presentations, LLC, 375 F.3d 266, 278 (4th Cir. 2004) (finding the fact that defendant-employer knew about plaintiff's successful work history in similar jobs supported the idea that employer did not regard employee as substantially limited in the major life activity of working); Rishel v. Nationwide Mutual Ins. Co., 297 F.Supp.2d 854, 868 (M.D.N.C. 2003) (finding that plaintiff's "regarded as" ADA claim failed to survive summary judgment based on working as a major life activity because employer believed employee was suitable for other jobs). As the Plaintiff has produced no facts to indicate that Defendant regarded Plaintiff as being precluded from a "substantial class of jobs," Plaintiff has not produced sufficient facts for her prima facie case to

survive summary judgment. Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

### b. Rebuttal

Even if Plaintiff could prove her prima facie case, Defendant has made a strong showing of the direct threat defense, and the Court would grant Defendant's Motion for Summary Judgment on this ground alone. Selection criteria for employment cannot tend to screen out individuals with disabilities, unless these standards can be shown to be job-related and consistent with business necessity. 42 U.S.C. § 12113(a). These criteria can also include a requirement that a potential employee cannot pose a direct threat to the "health or safety" of other individuals in the workplace. 42 U.S.C. § 12113(b). A direct threat is defined as a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). This risk assessment must be based on medical or other objective evidence, but a health care professional's belief that a significant risk existed, even if in good faith, does not shield the employer from liability. Bragdon, 524 U.S. at 649 (citing School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 2888 (1987)). A health care professional's state of mind cannot excuse discrimination "without regard to the objective reasonableness of his actions." [4] Bragdon, 524 U.S. at 650.

---

[4] While it is true that simple error on Greer's part would not make her medical determination objectively unreasonable, a medical professional must also perform a sufficiently individualized assessment and make objectively reasonable conclusions from that assessment. It would be illogical to allow an employer that did not do due diligence into an employee's medical history and limitations to escape liability just because of their reliance on a medical professional. A decision to the contrary would encourage employers to do only a cursory review of applicants and reject any that show even the slightest hint of a possible impairment, while avoiding liability under the direct threat defense. The ADA was passed to encourage employees to look beyond the stereotypes of disabled people by conducting an individualized review. See Sutton, 527 U.S. at 483-84 (noting that courts and employers should not make a disability determination based on general information on an impairment: "[It] would create a system in which persons often must be treated as members of a group of people with similar impairments, rather than as individuals. This is contrary to both the letter and the spirit of the ADA."); see also School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 287-88 (1987) ("[The goal of the ADA is] protecting handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns . . . as avoiding exposing others to significant . . . risks."). While the Court finds that Greer's medical conclusions are reasonable, the Court rejects any argument that simple reliance on a medical professional's conclusion is enough to escape liability without an inquiry into the objective reasonableness of that conclusion.

The Court finds that Greer's determination of Plaintiff's qualifications was objectively reasonable. While the existence and degree of Plaintiff's lifting restriction is under debate, Plaintiff's use of opiates is of legitimate concern to an employer whose employees use a motorized knife. Greer was rightfully concerned about Plaintiff's use of prescription narcotic pain killers and muscle relaxers. (Doc. #12, Ex. B, ¶¶17-18; see also "Carter's Medical Records" attached to Doc. #20, Ex. 12). Greer noted that Plaintiff's dosage and the frequency that she took the medication increased several times, and that she was regularly refilling her medication, indicating that she was regularly using the medication. (Doc. #12, Ex. B, ¶¶18-19; see also "Carter's Medical Records" attached to Doc. #20, Ex. 12, Dr. Gold notes on 4/21/2006 that "muscle relaxers make her sleepy" and elsewhere in the record that "Soma," a muscle relaxant, causes sedation in Plaintiff, but Plaintiff does not complain of impairment due to her medications anywhere else in her medical record). It is not objectively unreasonable for Greer to find that the Plaintiff was unfit for this particular job. See Sutton, 527 U.S. at 490 (1999) (An employer "is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job.").

    c. Screening Policy

Plaintiff maintains that Defendant's "Pre-Employment Policy," found in the record at Doc. #9, Ex. 10, screens out or tends to screen out applicants with certain medical conditions in violation of 42 U.S.C. § 12113(a), thus constituting a per se violation of the ADA.[5] Plaintiff cites no case law to support this proposition. Defendant has the right to deny applicants that pose a substantial risk that cannot be eliminated by accommodations. See 42 U.S.C. § 12113(a)-(b); 42 U.S.C. § 12111(3).

---

[5] There has been some discussion of Plaintiff's blood pressure and its effect on Defendant's employment decision. Defendant claims that Plaintiff's blood pressure was not a factor in the decision to decline to hire the Plaintiff. (Doc. #13). There is very little, if any, evidence in the record beyond Plaintiff's bare allegation that references Plaintiff's blood pressure other than the Defendant's Pre-Employment Screening Policy. (Doc. #9, Ex. 10). The Court finds this argument unpersuasive. See Goldberg, 836 F.2d at 848 ("[The plaintiff's] naked opinion, without more, is not enough to establish . . . discrimination.").

9

At issue in this case is whether Plaintiff does, in fact, pose a substantial risk that cannot be eliminated by accommodations. The stated purpose of Defendant's Pre-Employment Screening Policy is to "determine if the potential employee has any medical problems that might prevent performance of specific job requirements or be a danger to themselves or to others." (Doc. #9, Ex. 10). Having a policy that codifies the direct threat and business necessity defense is not a per se violation of the ADA. See Sutton, 527 U.S. at 490 (An employer "is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job."). The Court finds that the Defendant's Pre-Employment Screening Policy is not a per se violation of the ADA.

### d. Individualized Review

The last stage of the McDonnell Douglas analysis is whether the Plaintiff can show that the employer's proffered reasons for the employment actions are a pretext for discrimination. Plaintiff argues that Greer's assessment of her alleged impairments was not sufficiently individualized as required by the ADA. See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 199 (2002), *superseded by statute*, ADA Amendments Act of 2008, Pub.L. 110-325, 122 Stat. 3553 (noting that an individual assessment is particularly important when the symptoms vary widely); see also 29 CFR § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual"). There is no evidence to indicate that Greer's assessment, and McReary's decision not to hire Plaintiff, was a pretext for discrimination.[6] As

---

[6] With regard to the question as to when Greer made the decision to not recommend Plaintiff for employment, see Doc. #9; Doc. #13, the Court finds no evidence to suggest that Greer and Shook made the decision to not hire Plaintiff before looking at Plaintiff's medical records. The evidence suggests that this was a simple clerical error, and both Shook and Greer indicated that they had looked at Plaintiff's medical records before making a decision. (See Doc. #12, Exs. F, G).

stated above, Plaintiff has produced no evidence that Greer, Shook, or any other employee of the Defendant had discriminatory intent, and thus no evidence that any of Defendant's actions was a pretext to hide this discriminatory intent. Greer asked for Plaintiff's medical records, and performed a personal exam on Plaintiff. Plaintiff does not cite any rule that requires Greer to conduct a more extensive exam. In addition, Greer denies that she considered whether Plaintiff was a worker's compensation risk, and Plaintiff has no evidence to suggest that Defendant did regard Plaintiff this way. See Doc. #9, Ex. 5. As Plaintiff has not produced sufficient evidence to support her prima facie claim of discrimination under the ADA, Plaintiff's Motion for Summary Judgment is DENIED. In addition, the Defendant has produced a strong showing of the direct threat defense which Plaintiff has not sufficiently rebutted, so Defendant's Motion for Summary Judgment is GRANTED.

### C. Punitive Damages

Since this Court has granted summary judgment for the Defendant on the ADA claims, further consideration of the punitive damages claims would not be appropriate. Defendant's motion for summary judgment is GRANTED with regard to the punitive damages claim under the ADA because Plaintiff's claim that Defendant engaged in discriminatory practices did not survive summary judgment. See 42 U.S.C. § 1981a(b)(1) (2006) ("A complaining party may recover punitive damages under [the ADA] . . . if the complaining party demonstrates that the respondent *engaged in a discriminatory practice or discriminatory practices* with malice or with reckless indifference to the federally protected rights of an aggrieved individual.") (emphasis added).

### D. State Law Claims

Most North Carolina courts have applied the NCEEPA only in common law wrongful discharge claims. e.g., Hughes v. Bedsole, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995) (noting that the

11

NCEEPA does not have a private right of action and so any claims must be under North Carolina common law). Since neither the North Carolina Supreme Court nor the North Carolina Court of Appeals has recognized a private cause of action under the NCEEPA, this Court will decline to recognize one. See Staten v. Tekelec, No. 5:09-cv-434-FL, 2010 WL 3835127, at *8 (E.D.N.C. Aug. 10, 2010) (noting the inappropriateness of a federal court creating a private right of action under the NCEEPA when the North Carolina courts have not previously recognized such a right); see also Smith v. First Union Nat. Bank, 202 F.3d 234, 247 n.10 (4th Cir. 2000) (disapproving of the determination in Bass v. City of Wilson, 835 F. Supp. 255 (E.D.N.C. 1993), where the plaintiff's discrimination claim for failure to hire asserted under the NCEEPA was allowed to survive a motion to dismiss). Accordingly, the Plaintiff's claims under N.C. Gen Stat. § 143-422.2 fail as a matter of law, as does Plaintiff's claim for punitive damages under state law.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #8) is **DENIED**. The Defendant's Motion for Summary Judgment (Doc. #12) is **GRANTED**. Plaintiff's Objections to the Magistrate Judge's Order Regarding Plaintiff's Motion to Compel (Doc. #28) is **DENIED as moot**. The Clerk of Court is respectfully directed to close this action.

Signed: August 8, 2011

Richard L. Voorhees
United States District Judge